JAMES S. SLAVIN, Appellant, v. JOHN C. MCGUIRE et al., as Municipal Civil Service Commissioners of the City of New York, Respondents.

Civil service — a taxpayer's action will not lie to restrain the enforcement of an amendment to civil service rules adopted by the civil service commission of New York city — public notice of hearing on adoption of such amendment — what is sufficient advertisement of such hearing.

1. A taxpayer's action is inappropriate as a remedy for correcting illegal action on the part of civil service commissioners. The official acts of the commission in executing the commands of the statute are not judicial, in the technical sense; they are executive and ministerial in their nature, and, therefore, are to be reached, when they become the subject of judicial inquiry, by way of the writ of mandamus.

2. A taxpayer's action is allowed by the Code of Civil Procedure (§ 1925), and by the General Municipal Law (Cons. Laws, ch. 24, § 51), and it is recognized by the Civil Service Law (Cons. Laws, ch. 6, § 28); but under neither one of these statutes will an action lie to restrain municipal civil service commissioners from recog-

nizing and enforcing an amendment of the civil service rules which they had proposed and had caused to be duly approved.

3. According to the constitutional and statutory provisions the commissioners exercise the discretion with which they are invested when they recognize that positions are to be graded, not only by the character of the employment, but, as well, by the amount of compensation attaching thereto.

4. It is provided by the civil service rules of the city of New York (Rule 3, subd. 4) that public notice shall be given for not less than three days by advertisement and a public hearing shall be allowed on the request of any interested party in advance of any amendment to the rules or of the classification. The commission published an advertisement on the 25th, 26th and 27th of October, 1909, "together with a notice that a hearing would be had thereon at the office of said commission * * * at 10 o'clock in the forenoon of the 27th day of October, 1909." It was found that a proposed amendment "was adopted November 10, 1909, * * * and became operative on or about December 10, 1909," and "that no request for a public hearing was made by any interested party in advance of the adoption of the said amendment." The point that, because three days of advertisement had not elapsed before the appointed hearing, the notice was illegal, is not well taken.

*Slavin* v. *McGuire*, 144 App. Div. 910, affirmed.

(Argued February 28, 1912; decided March 26, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 16, 1911, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hugh Gordon Miller* for appellant. The action is properly brought by a taxpayer of New York city, and an injunction in such an action is provided for by statute. (*Steele* v. *Vil. of Glen Park*, 193 N. Y. 341; L. 1902, ch. 301; Cons. Laws, ch. 24, § 51.) The required public notice of a hearing was not given prior to the enactment of the said amendment. (*Matter of Douglas*, 46 N. Y. 42.) The grading of classified competitive positions in

the civil service with reference to salary only, and regardless of duties to be performed, is unauthorized and impracticable. (*People ex rel. Lodholz* v. *Knox*, 58 App. Div. 541; *Powell* v. *City of New York*, 65 App. Div. 421; *People* v. *Knox*, 71 App. Div. 306.)

*Archibald R. Watson, Corporation Counsel* (*James D. Bell* and *Frank Julian Price* of counsel), for respondents. The plaintiff has mistaken his remedy. He should have sued out a writ of mandamus instead of bringing an action. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92.) The grading and classification set forth in the amendments in question were legal. (Cons. Laws, ch. 7, § 11; *Powell* v. *City of New York*, 65 App. Div. 421.)

GRAY, J. The plaintiff brought this action, as a taxpayer, against the municipal civil service commissioners of the city of New York to restrain them from recognizing and enforcing an amendment of the civil service rules, which they had proposed and had caused to be duly approved. The complaint alleges that such amendment is unconstitutional, illegal and void for lack of sufficient notice prior to its adoption and because purporting to grade certain positions in the classified service with reference to compensation only. Issue was joined and the trial resulted in a dismissal of the complaint upon the merits. The judgment thereupon entered has been affirmed and the plaintiff, still further, appeals to this court.

A taxpayer's action is altogether inappropriate as a remedy for correcting illegal action on the part of the civil service commissioners. It has heretofore been pointed out by this court in *People ex rel. Schau* v. *McWilliams*, (185 N. Y. 92, 99 to 101), that the judicial control of their action must be exercised by way of the writ of mandamus. The decision of that case was a retraction of the views expressed by this court in the case of *People ex rel. Sims* v. *Collier*, (175 N. Y. 196); where it had been held that a review might be had by writ of certiorari. Very recently

the views expressed, in that respect, in *People ex rel. Schau* v. *McWilliams*, (*supra*), were re-affirmed in *Matter of Simons* v. *McGuire*, (204 N. Y. 253). In *Schau's* case, it was said in the opinion that "the cases cited indicate the true extent to which the court should assume to supervise the action of the civil service commission. If the classification of the commission clearly violates the Constitution, or the statute, mandamus should issue to correct the classification. If the action of the commission is not palpably illegal the court should not intervene." (p. 100.) The official acts of the commission in executing the commands of the statute are not judicial, in the technical sense; they are executive and ministerial, in their nature, and, therefore, are to be reached, when they become the subject of judicial inquiry, by way of the writ of mandamus. While, in the cases mentioned, the question arose over the right to review by writ of certiorari, the conclusion as to the remedy was definite.

A taxpayer's action is allowed by the Code of Civil Procedure, (sec. 1925), and by the General Municipal Law, (sec. 51), and it is recognized by the Civil Service Law, (sec. 28, former sec. 27); but under neither one of these statutes will such an action as this lie. The Code furnishes this remedy, only, where the object of the action is to prevent acts by officers, agents, commissioners, or other persons, acting on behalf of a county, town, village, or municipal corporation, which will affect, through waste thereof, or injury thereto, the estate, funds, or other property of either. The Civil Service Law relates to a taxpayer's action, when brought to restrain the payment of compensation to an appointee. The provision of the General Municipal Law is for an action against "all officers, agents, commissioners and other persons" acting on behalf of a municipal corporation, to restrain "any illegal official act" on their part. Although the members of the municipal civil service commission are local officers, they act, not for the municipality, but for the public in

carrying out the provisions of the State Civil Service Law. They are not the servants of the municipality. This statute was considered in *Matter of Reynolds*, (202 N. Y. 430, 440), and to bring a case within it, as it was said in the opinion, "the act sought to be enjoined should in some manner affect the estate, funds or property rights of the municipality." The legislature intended that the preventive jurisdiction of equity should be invoked in a taxpayer's action, only, when such was the effect of the act sought to be restrained. (See *Rogers* v. *O'Brien*, 153 N. Y. 357, 362.) The defendants in their work of classifying positions in the civil service were administering the Civil Service Law and their acts, in no wise, came within the purview of the statutes permitting actions by taxpayers.

For the reasons given, this action could not be maintained and the complaint was properly dismissed. But, as it is for the interest of the state that litigation should cease and because the question is of some public importance, we deem it expedient to add that the dismissal was correct upon the merits. It was complained that the notice prescribed by the statute was not given, prior to the adoption of the amendment proposed. Subdivision 4 of rule III of the municipal civil service rules provides that "public notice shall be given by the commission, through advertisement in the *City Record*, for not less than three days and a public hearing shall be allowed, on the request of any interested party, in advance of any amendment of these rules, or in advance of any amendment of the classification," etc. It was found, as a fact, that the commission published the advertisement on the 25th, 26th and 27th of October, 1909, "together with a notice that a hearing would be had thereon at the office of said commission * * * at 10 o'clock in the forenoon of the 27th day of October, 1909." It was, further, found that the proposed amendment "was adopted November 10, 1909, * * * and became operative on

or about December 10, 1909," and "that no request for a public hearing was made by any interested party in advance of the adoption of the said amendment." The point that, because three days of advertisement had not elapsed before the appointed hearing, the notice was illegal is not well taken. The rule did not require the commission to appoint any hearing; it gave the right to a hearing to any interested party in advance of any amendment and that right was not exercised by any request. What the rule intended and provided for was that the public should have the opportunity to be heard on any amendment of the rules, if any one requested a hearing, before its adoption and, as the amendment in question was not adopted until November 10th, the opportunity was afforded and the rule was not violated.

It is complained that the commissioners, by the amendment, have graded positions with reference to compensation only; regardless of the nature of the duties. This is not correct, either as a statement of the fact, or of the effect. By the amendment of the classification in the competitive class, the commission arranged positions in the civil service under a number of "Parts;" in each "Part" grouping, classifying, or grading, them according to the employment, or the nature of the duties to be performed. Under Part I they arranged in groups the "ungraded positions." Under Part II were grouped positions in the "clerical service," according to the kind of work to be done, and to these positions were assigned five grades "according to the amount of the annual compensation attaching to each." Under Part III, the "engineering service" was divided into classes, according to the nature of the duties, and within each class were named the offices, or positions, to be filled, in grades from the lowest, in order, of the duties to the highest in the class. To these positions were, also, assigned five grades, "according to the annual compensation attaching to each." It is unnecessary to describe the other of the

eleven " Parts " of the service. The method is pursued of collecting under each " Part " the various offices to be filled, arranged in classes, or in groups, or, simply, by the name given to the position, and as to all of these positions gradations are established according to the annual compensation fixed for each. In performing this work of classification, the commissioners sought to carry into effect the provisions of the Constitution and of the Civil Service Law; which had in view the making of " appointments and promotions in the civil service of the State and of all the civil divisions thereof * * * according to merit and fitness," etc. They were called upon to classify in grades and to consider, under section 16 of the Civil Service Law, (Cons. Laws, chap. 7), that an " increase in the salary or other compensation of any person holding an office or position * * *. beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion." Rule I of the municipal civil service rules, in paragraph 4, defines the term " grade " as referring " to subdivisions of the competitive class, arranged for purposes of promotion and based upon the relative character of the duties, or upon the amount of compensation regularly attaching to the positions contained therein." According to the constitutional and statutory provisions, and in accord with reason, the commissioners seem to have properly exercised the discretion with which they were invested, when they recognized that positions were to be graded, not only, by the character of the employment, but, as well, by the amount of compensation attaching thereto. They have not fixed the compensation of city employés; they have prescribed grades in their positions regulated, to use their language, by "the annual compensation attaching to each." Increase of salary, or compensation, may depend upon circumstances; but it is generally understood to mean a promotion of the recipient, due to his qualifications and the more efficient discharge of the duties of his position. It is, however,

unnecessary for us to discuss the question. If we should assume that reasonable men might differ as to the propriety of the method of classification, or of gradation, adopted by the defendants, the case is not one for the interference of the courts. The decision in the case of *People ex rel. Lodholz* v. *Knox*, (58 App. Div. 541; affd., 167 N. Y. 620), does not contravene these views. There the commission determined the grade of the relator by considering, only, the amount of the salary he received. When he was appointed a "draughtsman," his salary was $1,320. Subsequently his salary was increased to $1,800; but the civil service commission refused to certify to the increased salary; inasmuch as the salary he had been receiving represented that fixed for a "leveler," a position in the third grade, and the increase of salary was a promotion to another position without a new examination. It was held that the position and not the salary fixed the grade and that the relator was a "draughtsman" and not a "leveler," "no matter what his salary may be."

The judgment should be affirmed.

CULLEN, Ch. J., HAIGHT, WERNER and COLLIN, JJ., concur; WILLARD BARTLETT and CHASE, JJ., concur in result.

Judgment affirmed, with costs.